Chynna C. Simmons, #9936
Joshua Townsend Sr., #8001
SIMMONS TOWNSEND ᴾᴸᴸᶜ
910 W. Main Street, Suite 316
Boise, Idaho 83702
Telephone:  208.906.1500
Simmons@SimmonsTownsend.com
Townsend@SimmonsTownsend.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **BROOKS WANN**, through his guardian BRENDA WANN,<br><br>                             Plaintiff,<br><br>vs.<br><br>**VALLIVUE SCHOOL DISTRICT No. 139,**<br><br>                             Defendant. | Case No.<br><br>**COMPLAINT FOR** *inter alia* **TEMPORARY AND PERMANENT INJUCTIVE RELIEF AND DECLARATORY JUDGMENT** |

The Plaintiff, by and through his attorney Chynna C. Simmons of SIMMONS TOWNSEND ᴾᴸᴸᶜ, complains against the defendant as follows:

### PRELIMINARY STATEMENT AND PARTIES

1. The plaintiff, Brooks Wann, (hereinafter "Plaintiff") is a 17-year-old student of

Ridgevue High School, in the Vallivue School District No. 139, who is currently scheduled to graduate in Spring of 2019.

2. Brenda Wann (hereinafter "Guardian") is the mother and legal guardian of Brooks Wann.

3. Defendant Vallivue School District No. 139 (hereinafter "the District" or "Defendant") is a duly constituted school district and a body corporate Vallivue School District No. 139 is a political subdivision, body corporate and politic of the State of Idaho, organized and operating under the laws of the State of Idaho and subject to certain federal statutes and constitutional provisions more fully set forth in this Complaint. The District is a "person" under the laws and Constitution of the United States of America and at all times relevant hereto, the District, and its officers, agents, employees, attorneys, and all persons who are in active concert or participation with it, as set forth in more detail herein, were acting under color of law.

4. The District is governed by a Board of Trustees, which Board holds policymaking, administrative, and adjudicative authority for the school district with respect to the policy and procedure provided during disciplinary and expulsion hearings.

5. The undisclosed witness statements and the Districts adjudication procedures violate the Supremacy Clause of U.S. C$_{ONST}$. Art. VI, and the Due Process Clause of U.S. C$_{ONST}$. Amend. XIV, including among other's Plaintiff's constitutional right to an education and to confront witnesses against him.

## JURISDICTION

6. The plaintiffs bring actions for injunctive and declaratory relief because of violations of the Supremacy Clause of U.S. C<sub>ONST</sub>. Art. VI, and the Due Process Clause of U.S. C<sub>ONST</sub>. Amend. XIV. The claims asserted herein do not involve injury to persons or property and therefore do not fall within the Idaho Tort Claims Act, Idaho Code § 6-901 *et seq*.

7. This Court has jurisdiction over the plaintiffs' 42 U.S.C. § 1983 and Supremacy Clause claims under 28 U.S.C. § 1331. It also has jurisdiction over the plaintiffs' 42 U.S.C. § 1983 claims under 28 U.S.C. § 1343(a)(3). It has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and F.R.C.P. 65. And it has jurisdiction under 28 U.S.C. § 1367(a) over all of the plaintiffs' other claims because those claims form part of the same case or controversy, under U.S. C<sub>ONST</sub>. Art. III, as the plaintiffs' other claims. Under 28 U.S.C. §1367, this court also has concurrent and/or supplemental jurisdiction with the courts of the State of Idaho over claims arising under the laws and Constitution of the State of Idaho as recognized by a court of the 9th Circuit *Angioscore, Inc. TriReme Med, Inc.*, 84 F.Supp.3d 767 986, 999 (N. D. Cal 2015).

8. The court further has jurisdiction by reason of Defendant's acting under color of state law depriving Plaintiff of the rights, privileges and immunities secured by the Equal Protection Clause of the 14th Amendment of the United States Constitution and 42 U.S.C §1984 and enforcement of violations under 28 U.S.C. §2201-2202 because Plaintiff seeks a declaration of his federal civil rights; in the form of a judgment that his civil rights have been violated rather than judgment for declaratory relief.

9. Venue is proper in this Court and District, under 28 U.S.C. § 1391(b), because, on information and belief, the defendants are subject to personal jurisdiction in this District and because many of the events and omissions giving rise to the plaintiffs' claims occurred in this District of Idaho.

**FACTUAL BACKGROUND**

10. Plaintiff, born on February 23, 2001, is a seventeen-year-old, residing in the Vallivue School District No. 139.

11. Up until February 20, 2018, Plaintiff was a student at Ridgevue High School (hereinafter "Ridgevue"), located in the Vallivue School District No. 139. Plaintiff was a junior during the 2017/2018 school year. Plaintiff was also a member of the Ridgevue football, wrestling, and baseball teams.

12. During both term 1 and term 2 of the 2017/2018 School year, Plaintiff was enrolled in advanced classes including Advance Placement English, Advance Placement US History, Pre-Calculus, and Anatomy and Physiology. Plaintiff was an honor roll student every term during his enrollment at the Ridgevue and maintained a cumulative grade point average of 3.363.

13. Plaintiff was and is reasonably believed to qualify for both athletic and academic scholarships for college.

14. Prior to February 2018, Plaintiff was disciplined once on December 2, 2016, for eating in class. Plaintiff had no other disciplinary issues.

15. On the morning of Friday, February 9, 2018, Plaintiff attended football weight training with the Ridgevue football team.

16.   Plaintiff and two of his friends, M.S. and J.M. drove in Plaintiff's car to get breakfast after weight training. While in the parking lot, Plaintiff, M.S. and J.M. exchanged friendly banter and consensual horse play. This conduct continued into the locker room.

17.   J.M. repeatedly instigated and continued the horse play while in the Ridgevue parking lot and into the Ridgevue locker room.  J.M.'s locker was in a separate locker room from Plaintiff and M.S. but J.M. repeatedly ran into the locker room of M.S. and Plaintiff and continued to instigate horse play.

18.   M.S. recorded several shot videos of the horse play on "Snapchat."

19.   J.M. never complained about the horse play or the video to Plaintiff. J.M. did not ask Plaintiff to stop, gave no indication of discomfort, fear, or non-consent to the horse play, and in fact re-instigated the horse play by trying to "scare" or prank Plaintiff multiple times during the approximately 20 minutes in which the horse play sporadically occurred. J.M. was laughing continuously throughout the horse play.

20.   All parties were clothed during these events.

21.   After showering and changing, all three students socialized over breakfast in the cafeteria. All three students, including J.M. laughed about the videos and horse play.

22.   M.S. and Plaintiff attended a football meeting where they attempted to show their football coach one of the videos. The coach did not want to watch the video and proceeded to conduct the football meeting.

23.   M.S. later shared the video on "Snapchat" with an unknown number of other students at Ridgeview.

24. On Monday, February 12, 2018, during first period Plaintiff was called into the Ridgevue office and confined to a small room that was guarded by the Ridgvue school police officer. Plaintiff requested to speak to his mother but was unable to reach her.

25. After multiple hours of questioning, Plaintiff was required to give a written statement of the horse play that occurred on Friday February 9, 2018. Plaintiff's mother was not present during the questioning or the written statement.

26. At some point thereafter, a written report (hereinafter "Report") was created by Ridgevue's Vice Principle, Jeremy Berquist which vaguely claimed that Plaintiff became "physical" with J.M., tackled J.M., and used a car key to penetrate J.M.'s rectum multiple times. The Report also classified the incident as sexual harassment and charged Plaintiff as the "Main instigator/aggressor."

27. On February 12, 2018, Plaintiff and Brenda Wann were informed by letter that a hearing before a Vallivue District Discipline Review Team (hereinafter "Discipline Team") would be held the next day, Tuesday, February 13, 2018.

28. Plaintiff was not informed that any persons made written statements against him, nor was he given access to any of the written statements made against him.

29. Prior to the hearing, Vallivue Superintendent Pat Charleton approached Plaintiff and told Plaintiff to "take responsibility" for everything he is accused of and that "everything would be okay" if he did so.

30. Prior to any statements, the Hearing Officer explained the following process for the hearing:

"Jeremy Bergquist will present the case and documentation. You will have the opportunity to respond. The District Discipline Review Committee members will have the opportunity to ask questions. Then you will have the opportunity for further statements. We will then ask everyone to leave the room as the District Discipline Review Committee deliberates the case. Immediately following the deliberation, you will be invited back into the room and be notified of the team's action. Do you have any questions?"

31. Thereafter, Mr. Berquist read the Report into the record. No witness statements were read or produced, no adult or minor witnesses were presented for questioning or cross examination. Brooks was not given any notice regarding what statements were made that lead to the Report and was not given any opportunity to question the Report, the basis for the Report, or to seek clarification of what the vague language used in the Report was actually accusing him of.

32. At the hearing, Brooks denied the "penetration" portion of the Report but, influenced by Mr. Charlton, apologized for the situation. Plaintiff was asked several hypotheticals but never asked to explain the situation in his own words. Plaintiff repeatedly testified that J.M. and others were laughing and that J.M. was a friend.

33. Plaintiff was not at any point prior to or during the hearing, informed that their were witness statements made against him, who made them, or that he had a right to cross examine the witnesses who made those statements.

34. The Discipline Team, without giving explanation, referred Plaintiff to a formal expulsion hearing set for February 20, 2018 ("Expulsion Hearing").

35. At the Expulsion Hearing, the Administrative Review Team was given a "DDRC Packet." It is unclear what information was in the DDRC Packet. Plaintiff was not given a copy of the DDRC Packet or informed of what information it contained.

36. The hearing officer who presided over the Expulsion Hearing explained the process as follows:

"Dr. Yamamoto will present the case and documentation. You will have the opportunity to respond. The District Administrative Review Team members will have the opportunity to ask questions. Then you will have the opportunity for further statements. We will then ask everyone to leave the room as the District Administrative Review Team deliberates the case. Immediately following the deliberation, you will be invited back into the room and be notified of the team's action. Do you have any questions?"

37. The DDRC Packet, nor any other documentation was presented or read into the record at the Expulsion Hearing, all that was said is that "The packet is the same as last week's DDRC packet."

38. Again, Plaintiff was not at any point prior to or during the Expulsion Hearing given a copy of the DDRC Packet, nor informed that there were witness statements made against him, who made them, or that he had a right to cross examine the witnesses who made those statements.

39. Without explanation, the Discipline Team expelled Plaintiff from Ridgevue and any Vallivue School District Property for any reason for one calendar year.

40. Plaintiff, through counsel, requested a hearing de novo, based on Due Process violations stemming from Plaintiffs denial of access to the witness statement and denial of his right to cross examine witnesses. Witness statements were finally produced for Plaintiff on March 22, 2018.

41. The witnesses against Plaintiff include students J.M., M.S., and K.B. and adult faculty Tom Dewitz, Neil Stuzman, and Ryan Anderson.

42. On March 12, 2018, after multiple weeks of communications with the District, Pat

Charlton scheduled a de novo hearing for April 3, 2018. That hearing was then rescheduled for April 10, 2018. On April 10, 2018, less than two hours before the hearing was scheduled, counsel for Plaintiff was informed that the District cancelled the hearing, claiming that Plaintiff's request was untimely. Counsel for the District also claimed that Plaintiff did not have the right to a de novo hearing on Due Process grounds because Plaintiff did not have the right to cross examine the minor witnesses nor the adult witnesses unless he produced them.

43. This Complaint has been filed seeking declaratory judgment that Plaintiff is entitled to cross examine both adult and minor witnesses whose statements form the basis of the Report.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **Denial of Due Process**

44. Plaintiff repeats herein by this reference each and every allegation set forth in Paragraphs 1 through 43, inclusive, as if said paragraphs were set forth herein in full.

45. Plaintiff has a Constitutional right, protected by the United States Constitution, not to be deprived of Life, Liberty, or Property without Due Process.

46. "[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736 (1975).

47. "The Due Process Clause also forbids arbitrary deprivations of liberty. 'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is

doing to him,' the minimal requirements of the Clause must be satisfied." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736 (1975).

48. Having chosen to extend the right to an education to people of Plaintiff's class generally, the District "may not withdraw that right on grounds of misconduct, absent fundamentally fair procedures to determine whether the misconduct has occurred." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736 (1975).

49. "The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures -- Boards of Education not excepted." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736 (1975).

50. School authorities here expelled Plaintiff from school for one year based on charges of misconduct, including sexual harassment and bullying. As the United States Supreme Court has recognizes, "[i]f sustained and recorded, those charges could seriously damage the [Plaintiff's] standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment. It is apparent that the claimed right of the State to determine unilaterally and without process whether that misconduct has occurred immediately collides with the requirements of the Constitution." *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736 (1975).

51. The Ninth Circuit has held that expulsion procedures are unconstitutional for failing to provide a hearing at which the student could be represented by counsel and, through counsel, present witnesses on his own behalf, and ***cross-examine adverse witnesses***. *Black Coalition v. Portland School Dist.*, 484 F.2d 1040, 1045 (9th Cir. 1973) (emphasis added).

52. To comply with the due process guarantees under the U.S. Constitution, the District

must provide the Plaintiff with a fair, pre-deprivation hearing prior to expelling Plaintiff. The District's administrative procedures and practices do not allow Plaintiff to discover or confront the evidence against him. Those procedures are therefore inconsistent with the Due Process Clause of U.S. CONST. amend. XIV.

53. The District denied Plaintiff his Constitutional Right to Due Process when it, *inter alia*, admitted the hearsay Report based on the hearsay statements of students J.M., M.S., and K.B. and adult faculty Tom Dewitz, Neil Stuzman, and Ryan Anderson, without giving Plaintiff notice of these statements or an opportunity to cross examine these witnesses.

54. Under 42 U.S.C. § 1983, the plaintiff is entitled to injunctive and prospective relief prohibiting the Defendant from violating his rights, privileges, or immunities under federal law.

55. As a result of the actions and omissions of the Defendant herein the Plaintiff has suffered damages in an amount to be proved at trial.

## COUNT II
### Declaratory Judgment that I.C. § 33-205 violated the U.S. Const. Am. VIX and the Supremacy Clause

56. Plaintiff repeats herein by this reference each and every allegation set forth in Paragraphs 1 through 55, inclusive, as if said paragraphs were set forth herein in full.

57. Idaho Code § 33-205 limits Plaintiff's right to cross-examine to adult witnesses in violation of U.S. Const. Am. VIX and the Supremacy Clause.

58. Plaintiff seeks declaratory judgment that Idaho Code § 33-205 is unconstitutional because Plaintiff has a constitutional due process right to confront all witnesses against him.

## COUNT III
### Violation of I.C. § 33-205

59. Plaintiff repeats herein by this reference each and every allegation set forth in Paragraphs 1 through 58, inclusive, as if said paragraphs were set forth herein in full.

60. Idaho Code § 33-205 provides that Plaintiff has a right to cross-examine adult witnesses against him.

61. The District violated Idaho Code § 33-205 when it failed to produce adult faculty Tom Dewitz, Neil Stuzman, and Ryan Anderson at the Expulsion Hearing.

62. Plaintiff is entitled to injunctive and prospective relief prohibiting the Defendant from enforcing the expulsion in violation of his rights, privileges, or immunities under federal law.

63. As a result of the actions and omissions of the Defendant herein the Plaintiff has suffered damages in an amount to be proved at trial.

## CONCLUSION

WHEREFORE, the plaintiffs pray that this Court order the following relief and remedies:

A. Declare that the Defendant's expulsion of Plaintiff without providing Plaintiff a right to cross examination constitutes a denial of Plaintiff's constitutionally protected right to due process guaranteed by 42 U.S.C. §1983, and the Fourteenth Amendment to the Constitution.

B. Declare that I.C. § 33-205 violated the U.S. Const. Am. VIX and the Supremacy Clause by attempting to limit Plaintiff's right to cross examine adverse witnesses to adult witnesses.

C. Declare that Defendant violated I.C. § 33-205 when it failed to produce adult faculty Tom Dewitz, Neil Stuzman, and Ryan Anderson at the Expulsion Hearing.

D.   Grant a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendant and its officers, agents, employees, attorneys, and all persons who are in active concert or participation with it from enforcing the expulsion decision on Plaintiff.

E.   Waive the requirement for the posting of a bond as security for the entry of preliminary relief.

F.   Award the Plaintiff the costs of this action and reasonable attorney's fees and costs pursuant to Fed. R. Civ. P. 54, 42 U.S.C. § 1988 and as otherwise may be allowed by law.

G.   Award Plaintiff damages as may be proven at trial.

H.   All such other and further relief as the Court deems to be just and equitable.

### JURY DEMAND

The Plaintiff herein demands a jury trial on all issues triable to a jury.

**DATED** this 26th day of April, 2018, at Boise, Idaho.

SIMMONS TOWNSEND PLLC

BY:   /s/ *Chynna C. Simmons*
Chynna C. Simmons
Attorneys For Plaintiff Brooks Wann